# Ottinger
### EMPLOYMENT LAWYERS

535 Mission Street
San Francisco, CA 94105
(415) 262-0096

401 Park Avenue South
New York, NY 10016
(212) 571-2000

**Benjamin Weisenberg**
benjamin@ottingerlaw.com

August 6, 2018

**BY ECF ONLY**
The Hon. Judge George B. Daniels
United States District Judge
Southern District of New York
500 Pearl St.
New York, NY
10007-1312

Re: *Palos, et al. v. All American Homecare Agency, Inc., et al.*, **Case No.: 17-cv-05360**

Dear Judge Daniels:

As Your Honor is aware, The Ottinger Firm, P.C. (the "Firm") represents Plaintiff, on behalf of herself and all those similarly situated, in the above-referenced action. On May 10, 2018, this Court granted Preliminary Approval of the Proposed Settlement in this matter. (*See* Docket No. 25.). The Court issued a revised Preliminary Approval Order on May 27, 2018. (See Docket No. 27.) Notice of the Settlement has gone out to notify putative members of the Class and Collective to inform them of its terms and grant them an opportunity to opt-out or object (*see* Docket No. 28) and no objections or opt-outs were submitted. As a result, the Parties jointly submit this letter in support of Final Approval of the Proposed Settlement.

I.      **INTRODUCTION**

All American Homecare Agency, Inc., ("All American"), and Mr. Albert Isakov ("Mr. Isakov") (collectively "Defendants") operate a home health care service company that employs home health aides, personal care aides and home attendants. The Putative Class and Collective Members are comprised of approximately 63 intake coordinators, currently and/or formerly employed by Defendants at All American Homecare Agency, Inc. in New York from July 14, 2011 through the date of settlement approval. (*See* Docket 24-1, "Settlement Agreement "or "Proposed Settlement"), ¶ 4.)

On July 14, 2017, Plaintiff filed a Collective and Class Action Complaint and Jury Trial Demand. (*See* Docket No. 1.) Plaintiff sought recovery of unpaid wages, wage notice penalties, attorneys' fees and costs, interest, liquidated damages, and injunctive and declaratory relief. Defendants filed their Answer on August 21, 2017 (*see* Docket No. 11) disputing the material allegations in the Complaint and denying any liability in the proposed class and collective action. In August of 2017, as part of a pilot program for claims under the FLSA, this dispute was referred to mediation. (*See* Docket No. 12.)

*Palos, et al. v. All American Homecare Agency, Inc., et al.*
Page 2 of 9

Plaintiff's counsel and Defendants' counsel conducted numerous phone calls starting at an early stage in these proceedings and engaged in vigorous settlement discussions. Plaintiff's counsel and Defendants' counsel identified that the main points of contention include, but are not limited to, (a) the actual number of hours worked by each Putative Class/Collective Member during any one work week, (b) whether the Putative Class/Collective Members were exempt or non-exempt, and (c) whether unique questions of fact and/or law prohibit this matter from proceeding as a class or collective action. Ultimately, the parties engaged in informal discovery in which Defendant provided Plaintiff with time and pay data for the entire putative Class and Collective, comprised of 61 persons.

## II.   SETTLEMENT TERMS

The Agreement makes available $280,735.00 (the "Fund") to fully resolve and satisfy any and all amounts to be paid to Class and Collective Members, service awards, attorneys' fees and costs, and the fees and costs of settlement administration. The release of claims is limited to the FLSA and NYLL claims at issue in this litigation, and Putative Class and Collective Members will receive a payment from the Settlement unless they affirmatively opted-out. (*See* Settlement Agreement, Docket 24-1, ¶¶ 2, 7; *see also* Notice Packet, Docket No. 24-2.)

## III.   THE PROPOSED SETTLEMENT IS REASONABLE UNDER *CHEEKS* AND *WOLINKSY*

When parties privately settle FLSA claims with prejudice, the settlement must be approved by a district court or the Department of Labor. (*See Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199, 206 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 824 (2016).) To warrant approval, the parties must satisfy the court that their agreement is "fair and reasonable." (*Flores v. Food Express Rego Park, In*c., 2016 WL 386042, at *1 (E.D.N.Y. Feb. 1, 2016).)

Under *Wolinsky*, the first step in the analysis is considering the parties' agreement with respect to the various factors set forth by that Court, including: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement is the product of arm's length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. (*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).) These factors should be considered in light of the totality of the circumstances. (*Id.*) Other considerations that might militate against approval include: (1) the presence of other employees similarly situated to the claimant; (2) a likelihood that the circumstances will recur; (3) a history of non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue in dispute. *See id.* Other courts in this circuit have stated the factors somewhat differently. (*See*, *e.g.*, *Najera v. Royal Bedding Co., LLC,* No. 13-cv1767 (NGG), 2015 WL 3540719, at *2 (E.D.N.Y. June 3, 2015).) In *Najera*, Judge Garaufis articulated the relevant considerations as: (1) the complexity, expense, and likely duration of the litigation; (2) the stage of the proceedings and amount of discovery completed; (3) the risk of establishing liability; (4) the risk of establishing damages; (5) the ability of defendants to

*Palos, et al. v. All American Homecare Agency, Inc., et al.*
Page 3 of 9

withstand a judgment; and (6) the range of reasonableness of the settlement amount in light of the best possible recovery and all the risks of litigation. (*Id.* (collecting cases and approving the settlement agreement).)

### a. *Wolinksy* Factor No. 1—Plaintiffs' Range of Possible Recovery

The Settlement Fund represents: (i) 100% of the statutory wage notice penalties alleged; (ii) 100% of the statutory wage statement penalties alleged; (iii); 100% of all outstanding unpaid wages alleged; and 50% of all liquidated damages.  The Proposed Settlement therefore accounts for a substantial percentage of the plausible maximum possible recovery and weighs strongly in favor of approval.  Given the risks of litigation, these amounts likely represent equal to or more than what Plaintiff and putative Class and Collective Members could hope to recover through formal court proceedings.  Because the Settlement represents such a substantial portion of Plaintiffs' potential recovery, this factor therefore weighs in favor of approving the settlement.

### b. *Wolinksy* Factors Nos. 2 and 3—Seriousness of Litigation Risks, Plaintiffs' Avoidance of Burden and Expenses to Establish Their Respective Claims

The Fund established by the Proposed Settlement is reasonable in light of the considerable risks Plaintiffs face in achieving certification of the putative Class and Collective, maintaining certification throughout the litigation, and securing an outcome that is better than or even equal to the amount established by the Fund.  If the litigation proceeds, Defendants have and will argue that unique questions of fact exist as to (i) how many hours putative Class and Collective Members actually worked during any given workweek and (ii) whether Plaintiffs' overtime hours were *de minimis*.  Defendants have already argued that Plaintiffs' testimonial evidence may not be considered sufficient "generalized proof" to maintain a class and or collective action. (*See, e.g.*, *Mendez v. U.S. Nonwovens Corp.*, No. 12 Criv. 5583 (ADS) (SIL), 2016 WL 1306551, at *3-7 (E.D.N.Y. Mar. 31, 2016) (decertifying the collective as the plaintiffs failed to show that their claims for overtime were supported by "generalized proof.").)  In light of the significant litigation risks Plaintiffs face in maintaining the case as a putative Class and Collection action, the terms of the Proposed Settlement are more than fair and reasonable, and should be approved.  As a result, these factors weigh in favor of approving the settlement.

### c. *Wolinksy* Factor Nos. 4 and 5—Resolution of Litigation Through Arm's-Length Bargaining Between Experiences Counsel Absent Fraud or Collusion

The settlement reached by the parties is reasonable, procedurally fair and is not the product of collusion.  The settlement was agreed upon only after arm's length negotiations, once the parties had engaged in a thorough investigation of the relevant claims and defenses and vigorously exchanged arguments back and forth with one another, with the assistance of an experienced, neutral mediator. The Proposed Settlement avoids the unnecessary costs and difficulties of further litigation. Additional discovery and motion practice is unlikely to provide any addition detail useful to the parties—without incurring significant expense and delay—because the parties engaged in substantial informal discovery as part of the mediation process.  These factors therefore weigh in favor of approving the settlement.

*Palos, et al. v. All American Homecare Agency, Inc., et al.*
Page 4 of 9

### d. Review of the Negative *Wolinsky* Factors Also Supports Settlement Approval

*Wolinsky* also examines factors that mitigate against approval. These factors include (1) the presence of other employees similarly situated to the claimant; (2) a likelihood that the circumstances will recur; (3) a history of non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue in dispute.

Here, Defendants have certified to Plaintiff that the approximately sixty-three (63) putative Class and Collective Members incorporate all of Defendants' arguably "similarly situated" employees, despite Defendants having strong arguments against having to proceed in this action on either a class or collective action basis. The Proposed Settlement provides a meaningful remedy for all of these "similarly situated" putative Class and Collective Members. Further, Defendants have retained competent employment counsel so that they do not incur additional liabilities in the future, and they have not been party to a FLSA or NYLL class or collective settlement in the past that they have subsequently violated and/or repeated their past offense. Collectively, the parties are not aware of any reason why a more "mature record" would need to be developed in this action. Conversely, swift resolution provides fast, meaningful recovery to putative Class and Collective members. Here, a review of the negative *Wolinksy Factors* weighs heavily in favor of approving the Proposed Settlement as fair and reasonable.

### e. Plaintiffs' Counsel's Request for Attorneys' Fees Equal to One-Third of the Fund Is Reasonable and Supports Settlement Approval

The Firm is requesting attorneys' fees equal to one-third of the fund, or $93,577.00, and reimbursement of $698.38 in litigation costs/out of pocket expenses incurred by the Firm in prosecuting and successfully resolving this litigation. (*See* Settlement Agreement, Docket 24-1, ¶ 5; *see also* Notice Packet, Docket No. 24-2, ¶ II.H).)

There are two ways to compensate attorneys for successful prosecution of statutory claims: the lodestar method and the percentage of the fund method. (*See McDaniel v. Cnty. Of Schenectady*, 595 F. 3d 411, 417 (2d Cir. 2010).) In wage and hour class or collective action lawsuits, courts often award attorneys' fees as a percentage of the total fund in lieu of using the lodestar-type method. (*Wolinsky*, 900 F.Supp.2d at FN 2; *see also Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *6; *see also Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 102 (E.D.N.Y. 2015) ("Public policy favors a common fund attorneys' fee method in wage and hour class action litigation."); see also *Garcia v. Pancho Villa's of Huntington Village, Inc.*, 2012 WL 5305694, at *7 ("[t]he trend in this Circuit is to use the percent of the fund method to compensate attorneys in common fund cases"); *see also Puglisi v. T.D. Bank, N.A*, 2015 WL 4608655, at *1 (awarding class counsel one-third of the common fund.))

Courts tend to prefer the percentage method over the lodestar method to compensate attorneys for successful prosecution of statutory claims, because the percent method is closely aligned with market practices and "is intended to mirror the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients," (*Chavarria v.*

*New York Airport Service, LLC*, 875 F. Supp. 2d 164, 177 (E.D.N.Y 2012.)), the percentage of the fund method promotes early resolution and removes the incentive for plaintiffs' lawyers to engage in wasteful litigation in order to increase their billable hours. (*See Beckman v. Keybank, N.A.*, 293 F.R.D. 467, 474 (S.D.N.Y. 2013); *see also Costagna v. Madison Square Garden, L.P.*, No. 09 Civ. 10211, 2011 WL 2208614, at *6 (S.D.N.Y. June 7, 2011) (commending the plaintiffs' attorneys for negotiation early settlement)), Moreover, the percentage of the fund method preserves judicial resources because it "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." (*Asare v. Change Grp. of N.Y., Inc.*, No. 12 Civ. 3371 (CM), 2013 WL 6144764, at *17 (S.D.N.Y. Nov. 18, 2013) (quoting *Savoie v. Merchants Bank*, 166 F.3d 456, 461 n.4 (2d Cir. 1999)). Judges in the Eastern and Southern Districts of New York have consistently awarded one-third of the fund in these kinds of cases. (*See, e.g.*, *Willix*, 2011 WL 754862, *6 (awarding one-third of $7.675 million settlement fund in FLSA and NYLL wage and hour action); *Karic v. Major Auto. Companies, Inc.*, No. 09 Civ. 5708 (ENV) (CPL), 2015 WL 9433847, at n.9 (E.D.N.Y. Dec 22, 2015,) report and recommendation adopted sub nom. *Karic v. The Major Auto. Companies, Inc.*, No. 09 civ. 5708 (ENV) (CLP), 2016 WL 323673 (E.D.N.Y. Jan. 26, 2016) (listing cases); *Puglisi*, 2015 WL 4608655, at *1 (awarding $3.3 million in attorney's fees which is one-third of the total fund); *Kochilas v. Nat'l Merch. Servs.*, Inc., No. 14 Civ. 00311 (LB), 201 WL 5821631, at *4 (E.D.N.Y. Oct. 2, 2015) (awarding one- third of the total settlement fund); Hernandez, 306 F.R.D. at 102 (awarding one-third of $500,000 settlement); *Toure,* 2012 WL 3240461, at *5 (awarded one-third of $4.45 million fund in misclassification case.))

Plaintiffs' Counsel's fees are also consistent with the retainer agreements entered into by named Plaintiff Krystal Palos, which provide for counsel to receive one-third of any recovery. (*See Garcia*, 2012 WL 5305694, at *8 (the court states that "reasonable, paying clients typically pay one-third of their recoveries under private retainer agreements" as support for approving class counsel's request for one-third of the settlement fund) (internal quotation marks and citation omitted); *Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13 Civ. 3234 (LB), 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (approving as reasonable a negotiated fee of one-third of the settlement amount, plus costs, in accordance with the retainer agreement); *Calle v. Elite Specialty Coatings Plus, Inc.*, No. 13 Civ. 6126 (NGG)(VMS), 2014 WL 6621081, at *2-3 (E.D.N.Y. Nov. 21, 2014) (awarding one-third contingency fees as it was "consistent with [the] [p]laintiffs' retainer agreement with counsel and with the consent to sue form signed by all [of the] [p]laintiffs") (internal quotation marks and citations omitted).)

The Firm has worked a total of approximately 366 hours on this matter as of the date of this submission. Plaintiffs' Counsel anticipates spending additional time in the future assisting with the administration of the settlement, responding to Putative Class/Collective Members' inquiries and handling unexpected issues that will undoubtedly arise. The requested fee award is also meant to compensate for that time. The hours reported are reasonable for a case of this complexity and magnitude and were compiled from contemporaneous time records maintained by each attorney participating in the case using the online time tracking service Harvest.

*Palos, et al. v. All American Homecare Agency, Inc., et al.*
Page 6 of 9

Due to the experience of its attorneys in representing workers in litigation of this type, the Firm utilizes a small team of attorneys and support personnel to minimize duplication of efforts and maximize efficiency and billing judgment.

The Firm ordinarily and regularly bills legal time on an hourly fee basis using Harvest's real world, contemporaneous time tracking system at the Firm's attorney rate and paralegal rate. The Firm's standard attorney rate is $550 an hour, and the Firm's paralegal rate is $250 an hour. For the purpose of this application the Firm has reduced Mr. Weisenberg rate to $450 an hour, Ms. Pellouchoud's rate to $400 an hour, and Ms. Sanders' rate to $350 an hour. The following chart summaries the time spent on this matter by each Firm team member:

| INDIVIDUAL, POSITION | RATE/HR | TOTAL HOURS | FEES |
|---|---|---|---|
| Benjamin Weisenberg, Associate | $450 | 58.70 | $26,415.00 |
| Ashley Pellouchoud, Associate | $400 | 8.94 | $3,576.00 |
| Erica Sanders, Associate | $350 | 88.83 | $31,090.5 |
| Ariel Graff, Former Associate | $550 | 2.50 | $1,375.00 |
| Jose Caceres, Paralegal | $250 | 33.73 | $8,432.50 |
| Daniel Strellman, Paralegal | $250 | 69.64 | $17,410.00 |
| Kathryn Daly, Paralegal | $250 | 5.48 | $1,370.00 |
| Anna Odoi, Paralegal | $250 | 49.82 | $12,455.00 |
| **TOTAL FEES** | | | **$102,124.00** |

Given the time and resources invested into this matter, and the exceptional result on behalf of the proposed Class and Collective, the Court should approve Class Counsel's fees of $93,577.00—which falls below their lodestar expended on the case.

IV.   **THE SERVICE AWARD IS FAIR AND REASONABLE AND SUPPORTS SETTLEMENT APPROVAL**

In addition to her *pro rata* share of the Net Settlement Fund, we respectfully request that Your Honor award Named Plaintiff Krystal Palos a Service Award of $7,500 for her participation and assistance in the prosecution of this action.

Ms. Palos initially contacted Mr. Weisenberg and provided the Firm substantive and accurate information that served as the basis for the Firm initiating an investigation into Defendants. Ms. Palos has made herself available to the Firm whenever the Firm required, always provided accurate information and fairly represented the interests of the putative Class and

*Palos, et al. v. All American Homecare Agency, Inc., et al.*
Page 7 of 9

Collective. Ms. Palos has been forthright and honest and treated her role as the "face" of the Class and Collective with the seriousness and respect that the role deserves. The service award is reasonable given the significant contribution she has made to the prosecution and, subject to Your Honor's final approval, the significant recovery for the putative Class and Collective Members.

Courts acknowledge that plaintiffs play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. (*See, e.g.*, *Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698 (SAS) (KNF), 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class/collective as a whole, undertaken the risk of adverse actions by the employer or co-workers."); *see also Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (Recognizing the important role that plaintiffs play as the "primary source of information concerning the claims" and responding to counsel's questions and reviewing documents); *see also Willix*, 2011 WL 754862, at *5 (E.D.N.Y 2011) (approving service awards totaling $75,000.00 to the two named plaintiffs and two opt-in plaintiffs).)

Ms. Palos' responsiveness to the Firm's requests and willingness to donate her time to the Class and Collective without guarantee of an ultimate recovery exemplifies the very reason courts award service payments. (*See Frank*, 228 F.R.D. at 187) (recognizing the important role that plaintiffs play as the "primary source of information concerning the claim[,]" including by responding to counsel's questions and reviewing documents); *see also Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 Civ. 7670 (BSJ) (JCF), 2010 WL 532960, at *1 (S.D.N.Y. Feb. 9, 2010) (recognizing efforts of plaintiffs including meeting with counsel, reviewing documents, formulating theory of case, identifying and locating other class members to expand settlement participants, and attending court proceedings); *see also Willix*, 2011 WL 754862, at *7)("[S]ervice awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff."); *see also Massiah v. Metroplus Health Plan, Inc.*, 2012 WL 5874655, at *8 (E.D.N.Y. 2015) (Service awards further the important purpose of compensating plaintiffs for the time they spend and the risks they take.).)

Ms. Palos also assumed significant risks in prosecuting this action. Specifically, she took a chance that she would be "black listed" for the sake of the class/collective.  In employment context, where workers are often blacklisted if they are considered "trouble makers," representatives are particularly vulnerable to future retaliation. (*See, e.g., Tiro v. Public House Invs., LLC*, Nos. 11 Civ. 7679 (CM), 11 Civ. 8249 (CM), 2013 WL 4830949, at *11 (S.D.N.Y Apr. 16, 2012) (recognizing that plaintiffs in wage and hour case "fac[e] potential risks of being blacklisted as 'problem' employees")(internal citation omitted); *see also Siberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007) ("A class representative who has been exposed to a demonstrable risk of employer retaliation or whose future employability has been impaired may be worthy of receiving an additional payment, less other be dissuaded.").)

Even where there is not a record of actual retaliation, service awards are appropriate in recognition of the risk of retaliation assumed by lead plaintiffs for the benefit of absent collective

*Palos, et al. v. All American Homecare Agency, Inc., et al.*
Page 8 of 9

members. (*See Karic v. The Major Automotive Companies, Inc.*, No. 09 Civ. 5708 (CLP), 2016 WL 1745037, at *7 (E.D.N.Y. Apr. 27, 2016); *see also Frank*, 228 F.R.D. at 187-88 ("Although this Court has no reason to believe that Kodak has or will take retaliatory action towards either Frank or any of the plaintiffs in this case, the fear of adverse consequences or lost opportunities cannot be dismissed as insincere or unfounded."); *see also Parker*, 2010 WL 532960, at *1 ([F]ormer employees put in jeopardy their ability to depend on the employer for references in connection with future employment.").) Service awards "provide an incentive to seek enforcement of the law despite these dangers." *Id.*

The service award of $7,500 is reasonable and well within the range awarded by courts in similar matters. (*See, e.g.*, *Karic,* 2016 WL 1745037, at *7 (finding that a service "award of $20,000.00 each is reasonable in light of the overall settlement").) The proposed Service Award is reasonable in light of the proposed recovery achieved and payments approved by other courts in wage and hour cases. (*See Khait v. Whirpool*, No. 06-cv-6381 (ALC)*,* 2010 WL 2025106, at *9 (E.D.N.Y. Jan. 20, 2010)(approving service awards representing 19% of settlement fund); *see also Parker,* 2010 WL 532960, *2 (approving service awards totaling 11% of settlement fund and collecting cases permitting service awards ranging from 0.8% to 1.8% of settlement funds); *see also Frank*, 228 F.R.D. at 187 (approving award of approximately 8.4% of the settlement fund for named plaintiff in wage and hour case); *see also Chavarria v. New York Airport Service, LLC,* 10-cv-1930 (MDG), 2012 WL 2394797, *3, 10 (E.D.N.Y. 2012)(approving individual service award of $5,000 accounting for 3.7% of a $135,750 settlement).) For the foregoing reasons, the Service Awards is fair and reasonable and support Your Honor approving Settlement.

### V.     REACTION TO THE SETTLEMENT WEIGHS IN FAVOR OF APPROVAL

The parties jointly agreed to use Rust Consulting as the Claims Administrator in this matter. Rust Consulting is a nationally recognized Claims Administrator, and Plaintiff's counsel has worked with Rust Consulting in the past. Rust Consulting provided Plaintiff's counsel a Settlement Administration Estimate on March 21, 2018. Rust Consulting quoted $8,000 for administration of the Proposed Settlement. *Id.* As of May 30, 2018, the Claims Administrator has administered notice to Class and Collective members. (*See* Docket No. 28, ¶¶ 4-8.) The Notice advised putative Class and Collective members that they could submit an opt-out form postmarked by June 29, 2018 or file an objections with the Clerk of the Court before August 6, 2018. (*See id.* ¶ 8.). As of July 26, 2018: (1) no notices were returned as undeliverable; (2) the Claims Administrator received zero (0) opt-out forms; and (3) the Claims Administrator and Court have received no objections to the Proposed Settlement. (*Id.* ¶¶ 9-11.).

### VI.    THE PROPOSED SETTLEMENT SHOULD BE FINALLY APPROVED

Because the Proposed Settlement was preliminarily approved, the reaction to the Proposed Settlement has been positive, and no opt-outs or objections were received, we respectfully request that Your Honor enter the Proposed Order, filed herewith, granting Final Approval of the Proposed Settlement, approving Ms. Palos' service award of $7,500, and approving Class Counsel's requested attorneys' fees.

*Palos, et al. v. All American Homecare Agency, Inc., et al.*
Page 9 of 9

Dated: August 6, 2018

New York, New York

                                                        Respectfully submitted,

By: _____
      Benjamin Weisenberg
      THE OTTINGER FIRM, P.C.
      401 Park Avenue South
      New York, New York 10016
      Telephone: (212) 571-2000
      benjamin@ottingerlaw.com